Mr. Goldschmidt. May it please the court. The central question in this case is whether the Supreme Court's recent decision in Beckles v. United States bars Mr. Perry's due process challenge to his sentence enhancement. And the answer to that question is no, because Mr. Perry was sentenced in the Seventh Circuit's due process. That is, the law did not adequately heed the Supreme Court's remedial opinion in United States v. Booker. I'm a little, I'm perplexed by this argument. Once Booker is decided, it is the law whether a given panel of the Seventh Circuit correctly understands Booker or not. The guidelines were advisory as of 2005. We held in corner that a couple of panel decisions hadn't fully applied Booker as understood in Kimbrough. That doesn't mean that Booker was other than what he was or Kimbrough was other than what he was or that the guidelines were other than advisory. It meant there were two incorrect panel decisions which corner overruled. But how does that make the guidelines other than advisory? The court is correct that the Supreme Court in the guidelines advisory. Yes. By invalidating two statutes that previously had made them mandatory. The government uses that to argue that there... And that was that. The Seventh Circuit was bound by the decisions of the Supreme Court, right? Correct. We set in corner that two panels had not fully understood that. We overruled it. But the critical decision is Booker and the Board. And there we are. Booker directed the district courts to begin applying the guidelines as advisory in sentencing for the first time. And as we point out in the brief, it took some time after Booker for the district courts to learn how to do that as instructed by the Circuit Courts of Appeals. Yes. That's a process that only began with Booker. The guidelines being advisory while they sit on a shelf is all very well and good. So when did the when did the guidelines become truly advisory? Again, the corner in 2010? In the Seventh Circuit, in other circuits? Does it vary? So we agree with Judge Easterbrook that Booker declared the guidelines advisory the day it was decided. Whether due process was followed thereafter is a question of to what extent the courts followed that If Perry thought that the guidelines had been applied to him in a non-advisory manner, he had to take an appeal. He didn't. Mr. Perry is not asserting an abstract or general right to have the guidelines applied to him as advisory. He's asserting the right announced in Johnson not to have his sentence fixed by the vague, the specific vague language that was struck down in that case. That's apply the guidelines because the guidelines are advisory. The guidelines have been advisory since Booker and if your client thought, I mean you just take it as a given that the guidelines were not treated as advisory in your client's case. But that would have been a reason for him to appeal from his sentence. We shouldn't take it as a given that there was an incorrect application or that the district judge was out of compliance with Booker. That would have been an appellate argument, but it was never made. Two points, Your Honor. First as to Beckles. Beckles forecloses challenges to the advisory guidelines, which is why we're here arguing about whether Mr. Perry was sentenced under advisory guidelines or mandatory guidelines. Second, again, Mr. Perry is not opposed until Johnson. So the right that he's asserted. The Constitution has been with us before Johnson. Agreed. But that's not the basis of this appeal. The basis of this appeal is that your client was treated as if the guidelines were mandatory. Because if he was treated as if the guidelines were advisory, as Booker holds, then everything follows from Beckles. So why didn't he appeal back in 2007 to say, I've been denied the benefits of Booker and Kimbrough? The basis of the appeal is more significant, excuse me, more specific. I wish you'd address my question rather than addressing a question that you wish I had asked. The answer to your question about why he didn't appeal within a year of his sentence was what I said before. Not a year. You have ten days in a year. Thank you, Your Honor. He was not asserting a vague general right to be free from mandatory sentencing. He is asserting the right announced in Johnson, which is not to have one sentence fixed by this specific language in the residual clause that was used to sentence him. That right didn't exist before until Johnson announced it. And when Johnson did announce it, he invoked it in filing his You're in a very difficult situation. At our invitation, we should add, but I want to say that I thought your brief was really terrific, but I need to know why. I mean, I need to know how Johnson applies directly. I can't figure it out. Thank you, Your Honor. I think that leap can be made fairly quickly and easily by pointing to the Hurlburt decision where this court found that that conclusion leads inexorably from Johnson. So the question is, to what extent does Hurlburt remain good law today? And the answer to that question is, to the extent it was not abrogated by Beckles. Because Beckles was limited to advisory sentences, advisory guidelines, rather, the portion of Hurlburt that related to mandatory guidelines persists post-Beckles. And so the question now is, again, whether Mr. Perry was sentenced in an advisory regime or a mandatory one. In other words, was he sentenced in a regime that adequately heated Booker at the time of his sentencing? And why is that to be evaluated on the basis of one circuit's law, as opposed to saying, for example, this district judge, I'm not saying, but imagine a different case where you say, this district judge just never really understood Booker, didn't want to go along with it. Or, you know, the Eighth Circuit resisted Booker, and the Supreme Court had to set them straight in Gaul. If that's correct, then one would expect different results for people situated like Perry in different circuits, sentenced in February of 2007, right? You'd have to kind of do a pathology of the pathological examination of the circuit law at the time. That seems like a very odd way to go about solving these problems. I think the Court is correct that that is the logical implication of our argument, that one would have to look at what the circuit was doing. But the reason for that is because when the Supreme Court says something like it did in Booker, that the guidelines are now effectively advisory, it is up to the circuit courts to parse that and explain to their district courts what that means and how to apply it. And we know that after Booker, the circuits did take different approaches to that question. What would you say if a defendant comes to court and says, I was sentenced in 2013, and I've looked up data from the Administrative, or from the Sentencing Commission, or the Administrative Office, which shows that the judge who sentenced me imposed 95% of all of his sentences within the guidelines range. That indicates that he was treating the guidelines as mandatory, because even before Booker, 5% or more were outside the range. And therefore, Beckles doesn't apply to any sentences imposed by this judge, and therefore Johnson does. Would that be a sound argument? I don't think it would be a sound argument, and it's also not one we're making here. I understand what argument you're making here. That's why these things are called hypotheticals. Agreed. The argument from statistics does not at all look at the way that the court was in fact applying, that this court was applying Booker after it was decided. And that's the critical inquiry. I don't know why, logically, the argument you're making, if we accept it here, wouldn't apply, judge by judge, to how frequently they go outside the guidelines. And if they don't go outside the guidelines more frequently after Booker, that would indicate that they're still as effectively mandatory as they were before Booker, and therefore Beckles doesn't apply to that judge. Judge by judge, and presumably year by year, because the data keep coming different every year. The reason that that hypothetical wouldn't present a valid claim is because I'm not aware of any precedent that would support claiming that. Well, I'm not aware of any precedent that supports your position either. You're arguing that we should establish a precedent. And I'm saying, if we establish that precedent, aren't we logically required to go through the process that I've just been describing? Our argument flows from Johnson and Beckles, which are two Supreme Court decisions that we say, combined, support our position. Mr. Goldschmidt, I appreciate the analysis that's been put forward. I'd like to ask you a little bit about the elements clause alternative here, which was, in fact, as I read it, the district judge's basis for denying relief here. Not defended by the United States, apparently, but under the approach that you've argued, could the attempt language in the Armed Career Criminal Act and sentencing guideline definition of violent crimes ever apply, if we apply the categorical approach? Because you can attempt lots of otherwise violent crimes without ever having to take a violent step. So the attempt language in the guideline could apply. How? Because the entire question is whether the prior conviction had as an element the use or attempted use of violent physical force. So you could imagine a statute that had as an element the attempted use of force. What is that statute? I'm not aware of one. I'm not aware of any either. There are a lot of criminal statutes in a lot of states in the country. But every attempt crime I'm aware of allows the significant step towards completion to be a wide variety of different sorts of steps without requiring that it be a violent element. Am I making that sufficiently clear? I think that's your argument. Your argument is that under the categorical approach, attempted armed robbery or attempted murder is not a violent crime under these definitions. So I'm wondering, under your categorical approach to that definition, is there any situation you can imagine in which the attempt language would have any effect? Yes. So if, for example, a state defined attempted murder as consisting of one element and that element was attempting to shoot someone with a gun, that law would be that type of law. I've never heard of such a law. I agree. I'm assuming that Congress intended and the Sentencing Commission intended that language to have some effect. The approach that I outlined in the concurrence in Morris would give it effect, much more effect than you want to advocate for here. But I'd like to see if there's some middle ground there. I think, again, we would concede that without cataloging all of the criminal statutes in the country, that it's possible for that language to have an effect under our interpretation. Okay. And the counterpoint is, of course, this attempt that Mr. Perry was convicted for had two elements, neither of which was categorically the use of violent physical force. Thank you. Thank you. Thank you, Mr. Goldschmidt. Ms. Kastanek. May it please the Court, Andrea Kastanek on behalf of the United States. The Supreme Court's decision in Johnson does not provide a vehicle for defendants sentenced as career offenders under the post-Booker advisory guidelines to challenge their sentence. The defendant was sentenced in 2007. It came about two years after Booker made the guidelines advisory by striking 3553B1, which was the provision of the statute that had rendered the guidelines mandatory. The defendant proposes no workable rule for finding that anything but Booker is what made the guidelines advisory. As a result, the government's position is that the Court should not even reach the analysis of the elements clause. To address Judge Hamilton's questions about the attempted robbery convictions in this case, the district court's opinion here was decided prior to Beckles. Beckles came down while this appeal was pending after the defendant had submitted its first brief. In the government's view, Beckles, because it resolves this issue on a procedural ground by precluding the defendant from raising this in the form of a 2255, makes it unnecessary to reach the question of whether attempted robbery satisfies the elements clause. The government certainly does not concede that it does not. In fact, in a separate matter that's pending before this Court, Michael Smith, that exact issue is at issue. And the government's analysis follows Judge Hamilton's concurrence and his analysis of why attempted robbery does satisfy the elements clause. For all those reasons, the government asks that this Court affirm the defendant's sentence and the district court's opinion below denying the 2255. Thank you. Thank you very much, Counsel. Mr. Goldschmidt, we appreciate your willingness and that of your law firm to accept the appointment in this case. Obviously, we pressed you on this. When you make an ambitious argument, you can expect to be pressed on the consequences. But you acquitted yourself well, and we appreciate your assistance to the Court as well as to your client. The case is taken under advisement, and the Court will be in recess.